674 So.2d 250 (1996)
STATE of Louisiana
v.
Eddie MITCHELL, Jr.
No. 94-KA-2078.
Supreme Court of Louisiana.
May 21, 1996.
*252 Clive Adrian Stafford-Smith, New Orleans, for Applicant.
Richard P. Ieyoub, Attorney General, Robert "Rick" Bryant, District Attorney, Frederick W. Frey, Paul P. Reggie, for Defendant.
MARCUS, Justice.[*]
Eddie Mitchell, Jr. was indicted for the first degree murder of Paul Guillory in violation of La.R.S. 14:30. He entered a plea of not guilty. After trial by jury, defendant was found guilty as charged. A sentencing hearing was conducted before the same jury that determined the issue of guilt. The jury unanimously recommended that a sentence of death be imposed on defendant. The trial judge sentenced defendant to death in accordance with the recommendations of the jury.
*253 On appeal, defendant relies on twenty-one assignments of error for reversal of his conviction and sentence.[1]

FACTS
On May 1, 1992, the victim, 67 year old Paul Guillory, went to the bank to deposit his Social Security check and his retirement check, receiving $818.57 back in cash. Thereafter, the victim went to visit his grandson, Craig Johnson. He left about 4:00 p.m. to run some errands, but stated he would return at 5:00 p.m.
When the victim did not return by 5:00 p.m., Craig drove to his house to check on him. Upon arrival, Craig found the victim lying face down on his porch surrounded by blood, near a big stick. Craig called 911. The paramedic who responded found the victim was dead, having sustained open skull fractures and fractures of both arms. Police interviewed Billy Shaw, the owner of the house where the victim had lived. Shaw indicated that the victim had previously lived with Shaw's mother, now deceased, and that as a result, the victim was allowed to stay in the house as long as he lived. When asked if he knew of anyone who had been hanging around the victim's house, Shaw indicated that defendant (his cousin) periodically did yard work for the victim.
A few days later police located defendant, who voluntarily accompanied them to the station house. After defendant was advised of his rights, he agreed to waive his rights and speak with the detectives. Initially, defendant indicated that he had been at a friend's house on the day of the murder, but detectives found discrepancies in his story. In response to subsequent questioning, defendant stated he "didn't mean to kill" the victim.
Defendant recounted that he went to the victim's home at approximately 2:00 p.m. He tried to borrow some money from the victim, but the victim told him that he had paid bills and did not have any money. Defendant thought the victim was mad for some reason. He left and waited around the corner about fifteen minutes, at which time he saw the victim leave. Defendant then re-entered the porch area and sat in a chair there. He also found a stick which he brought onto the porch with him. While sitting on the porch, he first thought about asking the victim for cans which were in a bag on the porch but then thought about just hitting the victim over the head and taking his wallet. When the victim returned, defendant asked him for the cans. The victim refused to give him the cans. As the victim attempted to open his door, defendant stood up, got the stick, and hit the victim over the head. The first blow knocked the victim to the ground. He continued to hit the victim about five or six more times, then removed his wallet and ran away. When he reached a nearby vacant house, he emptied the money out of the victim's wallet and discarded it under the house. After recounting his actions, defendant accompanied the detectives to the vacant house, directing them to the place where he left the victim's wallet.
After his indictment, defendant filed a motion for appointment of a sanity commission, seeking determination of his capacity to proceed and his sanity at the time of the offense. A sanity commission was appointed, and both doctors issued reports, finding defendant "presently sane and able to stand trial." After a hearing, the trial judge determined that defendant was able to proceed. Subsequent testing revealed that defendant had a full scale IQ of 66, which placed him in the range of mild mental retardation, although the examiner performing the test indicated that defendant did not appear to be motivated to perform to the best of his abilities.
Defendant did not file a motion to suppress his confession. However, at trial, out of the presence of the jury, the trial judge ruled that the state met its burden under La.R.S. 15:451 in showing the statement was free and voluntary, and was not made under any threat, pressure, coercion, force, promises and inducements.
*254 In its opening statement at the guilt phase, the defense admitted that defendant killed the victim, but argued that he did not go to the victim's house with a "premeditated mind to rob and kill" the victim. During the guilt phase, the defense presented no witnesses of its own, but cross-examined the state witnesses. At the penalty phase, the thrust of the defense's case was that defendant's mental retardation should be considered as a mitigating factor. In support, the defense introduced the testimony of ten witnesses, including three expert witnesses in the field of mental health.

PRETRIAL ISSUE

Assignment of Error No. XVI
Defendant contends that the trial judge erred in denying his challenge for cause of prospective juror Cindy Devillier. He argues that Ms. Devillier indicated that she would not consider mitigating evidence and would be biased against him if he did not testify at trial.
In State v. Cross, 93-1189 (La. 6/30/95), 658 So.2d 683, we held that to prove error warranting reversal of his conviction and sentence, the defendant must show (1) the erroneous denial of a challenge for cause and (2) the use of all his peremptory challenges.
In the instant case, we need not reach the issue of whether there was an erroneous denial of defendant's challenge for cause, since the record reveals that defendant failed to use all his peremptory challenges. Although defendant used a peremptory challenge to remove Ms. Devillier, he still had three remaining peremptory challenges at the close of jury selection. Accordingly, defendant is not entitled to relief.[2]
Defendant next contends that the trial judge erred in granting the state's challenges of prospective jurors Carmen Istre and Linda Grice. He argues that they should not have been excluded under Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
La.Code Crim.P. art. 798(2)(a), which incorporates the standard of Witherspoon, as clarified by Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985), provides that it is good cause for a state challenge that a prospective juror would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him.
In the instant case, Ms. Istre stated that although she believed in capital punishment, she personally could not vote to impose the death penalty under any circumstances. Asked by defense counsel if she could follow the law and accept the law on this issue, she gave a negative response, saying, "Not when it comes to putting a man's life to death, no, I can't." Likewise, Ms. Grice revealed that she was not in favor of the death penalty, and when she was asked if she could conceive of any circumstances where she would find that penalty appropriate, she responded, "I'm against it totally." Based on these responses, the trial judge did not err in granting the state's challenges for cause of these two prospective jurors.
Assignment of Error No. XVI is without merit.

GUILT PHASE ISSUES[3]

Assignment of Error No. VII
Defendant contends that the trial court improperly instructed the jury in the guilt phase that it "may infer that the defendant *255 intended the natural and probable consequences of his acts." He argues that he objected to this instruction at trial on the ground it created an improper presumption under Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).[4]
In Sandstrom, the Court held that the trial judge erred in instructing the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts," since this instruction could be considered to be a mandatory presumption by the jury and thus improperly shift the burden of proof from the state. In State v. Copeland, 530 So.2d 526, 539 (La.1988), we stated:
The mere use of the word "presume" raises the spectre of a Sandstrom-type problem. For that reason, the preferable instruction is "... you may infer that the defendant intended the natural and probable consequences of his acts ..." (emphasis in original).
In the instant case, the trial judge's instruction follows the language we approved in Copeland. Clearly, the instruction does not set forth a conclusive presumption shifting the burden of proof from the state to defendant. Accordingly, this instruction was not erroneous.
Assignment of Error No. VII is without merit.

Assignment of Error No. XI
Defendant contends his trial counsel failed to give constitutionally effective assistance during the guilt phase of the prosecution. He argues his trial attorney failed to explore his mental retardation and made no effort to suppress his confession.
An ineffective assistance of counsel claim may be addressed on direct review if the record discloses evidence needed to decide the issue. State v. Ratcliff, 416 So.2d 528, 530 (La.1982) (record was sufficient since ineffective assistance claim was explored in detail during a hearing on a motion for new trial). However, the issue is more properly raised by application for post-conviction relief in the trial court, where a full evidentiary hearing may be conducted if warranted. State v. Scales, 93-2003 (La. 5/22/95), 655 So.2d 1326; State v. Stowe, 93-2020 (La. 4/11/94); 635 So.2d 168; State v. Deloch, 380 So.2d 67 (La.1980).
In the present case, the record does not contain sufficient evidence to resolve defendant's ineffective assistance of counsel claim on direct review. Defendant may re-raise this issue by application for post-conviction relief in the trial court.

PENALTY PHASE ISSUES

Assignment of Error No. I
Defendant contends that the death penalty is an inappropriate punishment for mentally retarded defendants convicted of first degree murder. Although defendant concedes that the Eighth Amendment does not bar the death penalty for the mentally retarded, he argues this court should find that the Louisiana Constitution bars such a sentence.
In Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), the United States Supreme Court addressed the issue of whether it was cruel and unusual punishment to execute a defendant who had an IQ of between 50 and 63, which indicated mild to moderate retardation. The Court concluded that the Eighth Amendment did not preclude the execution of a mentally retarded person of Penry's ability simply by virtue of his mental retardation alone, reasoning that so long as sentencers can consider and give effect to mitigating evidence of mental retardation in imposing sentence, an individual determination of whether death is the appropriate punishment can be made in each particular case. In State v. Brooks, 92-3331 *256 (La. 1/17/95), 648 So.2d 366, an issue was raised as to whether Brooks' retardation (with an IQ of between 44-67) would render his execution unconstitutional. Although we ultimately deferred this issue since we reversed the death sentence on other grounds, we noted that Brooks made no showing that the degree of his mental impairment approached that of Penry, failed to demonstrate that his mental deficiencies rendered him incapable of acting at the level of culpability required for the imposition of the death penalty and failed to set forth any reasons why he was in any respect different from the large number of mildly retarded persons falling within his general psychological classification.
In the instant case, the expert testimony established that defendant is classified as mildly retarded, with an IQ range of between 61-71, somewhat higher than that of the defendants in Penry and Brooks. The jury heard extensive evidence at the penalty phase from the defense's expert witnesses relating to defendant's mental condition. La. Code Crim.P. art. 905.5(e) specifically directs the jury to consider as a mitigating circumstance whether "the capacity of the offender to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or intoxication." (emphasis added). Clearly, the jury was able to consider and give effect to this mitigating evidence in imposing the sentence. Based on these findings, we are unable to conclude that either the federal or Louisiana constitutions preclude the execution of defendant simply by virtue of his mental retardation alone.
Assignment of Error No. I is without merit.

Assignment of Error No. III
Defendant contends that the trial judge erred in failing to instruct the jury on the meaning of mental defect. Although the trial judge instructed the jury on the statutory mitigating circumstance relating to the offender's mental disease or defect set forth in La.Code Crim.P. art. 905.5(e), defendant argues that he was required to give a special instruction on mental defects under our opinion in State v. English, 367 So.2d 815 (La. 1979).
In English, the defendant was indicted for first degree murder. He pleaded not guilty and not guilty by reason of insanity. During the guilt phase, the jury was instructed that "an insane person is one who is incapable of distinguishing right from wrong." The defendant was found guilty as charged. At the penalty phase, the defendant requested that the jury be charged on the meaning of the term "mental disease or defect" as used as a mitigating circumstance in La.Code Crim.P. art. 905.5(e) and charged that this term was "not to be confused with insanity, as you have previously been instructed." The trial judge refused to give the instruction. On appeal, we found that the defendant was entitled to the requested instruction. We reasoned that under these circumstances, the jury may have believed that the test of the mitigating circumstance was the same as the test of legal insanity, thus denying the jury the opportunity to consider defendant's psychiatric illness as a mitigating circumstance.
The instant case is clearly distinguishable from English, since defendant did not plead not guilty by reason of insanity during the guilt phase. Unlike the jury in English, the jury in the instant case was never instructed on insanity during the guilt phase, so there was no possibility that the jurors could confuse the test for insanity with the test for mental defect or disease under La.Code Crim.P. art. 905.5(e). Accordingly, the trial judge did not err in failing to charge the jury on the meaning of mental defect.
Assignment of Error No. III is without merit.

Assignment of Error No. XII
Defendant contends that trial judge erred in allowing the admission of allegedly gruesome photographs at the penalty phase *257 to establish the aggravating circumstance that the offense was committed in an especially heinous, atrocious or cruel manner. He argues the photographs were highly inflammatory.
Photographs are generally admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing or place depicted. State v. Landry, 388 So.2d 699 (La.1980). Post-mortem photographs of murder victims are admissible to prove corpus delicti, to provide positive identification of the victim, to corroborate other evidence establishing cause of death, the manner in which death occurred, and the location, placement, and severity of wounds. State v. Bourque, 622 So.2d 198, 236 (La.1993). The mere fact that a photograph is gruesome does not in and of itself render a photograph inadmissible. The admission of gruesome photographs is not reversible error unless it is clear that their probative value is substantially outweighed by their prejudicial effect. State v. Martin, 93-0285 (La. 10/7/94), 645 So.2d 190, 198.
In the instant case, the photographs demonstrate the types of injuries inflicted on the victim, including fractures to his skull and defense injuries on his hands and arms. These photographs were clearly probative on the issue of whether the offense was committed in an especially heinous, atrocious or cruel manner. Accordingly, we find the trial judge did not err in admitting the photographs into evidence, since their probative value outweighed any prejudicial effect.
Nonetheless, defendant argues that even if the photographs were admissible, they still introduced an arbitrary factor into the penalty phase since the aggravating circumstance of heinousness was an invalid circumstance under the facts of this case.
We find no merit to this argument. A review of the photographs shows that, on the whole, they are not excessively bloody or inflammatory.[5] The photographs simply illustrated testimony the jurors already heard in the guilt phase relating to the injuries sustained by the victim. Accordingly, even assuming (without deciding) that the aggravating circumstance of heinousness is invalid under these facts, we find that the photographs were not so prejudicial as to introduce an arbitrary factor into the proceedings.
Assignment of Error No. XII is without merit.

SENTENCE REVIEW
Article 1, section 20 of the Louisiana Constitution prohibits cruel, excessive, or unusual punishment. La.Code Crim.P. art. 905.9 provides that this court shall review every sentence of death to determine if it is excessive. The criteria for review are established in La.Sup.Ct.R. 28, § 1, which provides:
Every sentence of death shall be reviewed by this court to determine if it is excessive. In determining whether the sentence is excessive the court shall determine:
(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and
(b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
(c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

(a) PASSION, PREJUDICE OR ANY OTHER ARBITRARY FACTORS[6]
Defendant contends that an arbitrary factor was introduced into the proceedings by the prosecutor's opening statement at the penalty phase in which he told the jurors that he requested that they impose the "same penalty" on defendant that defendant imposed on the victim "although in a much nicer manner."
*258 A conviction will not be reversed due to an improper remark during closing argument unless the court is thoroughly convinced that the remark influenced the jury and contributed to the verdict, as much credit should be accorded to the good sense and fairmindedness of jurors who have seen the evidence and heard the argument, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence. State v. Martin, 93-0285 (La. 10/17/94), 645 So.2d 190, 200; State v. Kyles, 513 So.2d 265, 275-76 (La.1987); State v. Jarman, 445 So.2d 1184, 1188 (La.1984).
In the instant case, even assuming the prosecutor's statement was improper, we do not find that this brief comment created a substantial risk that the death penalty would be imposed under the influence of passion, prejudice, or other arbitrary factors.
Our review of the remainder of the record reveals there is no evidence that passion, prejudice or any other arbitrary factors influenced the jury in its recommendation of the death sentence.

(b) STATUTORY AGGRAVATING CIRCUMSTANCES
The jury in its verdict found the following aggravating circumstances:
(a) the offender was engaged in the perpetration or attempted perpetration of armed robbery (La.Code Crim.P. art. 905.4(A)(1));
(b) the offender was engaged in the perpetration or attempted perpetration of aggravated burglary. (La.Code Crim.P. art. 905.4(A)(1));
(c) the offense was committed in an especially heinous, atrocious or cruel manner. (La.Code Crim.P. art. 905.4(A)(7)).
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La.R.S. 14:64. "Dangerous weapon" includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm. La.R.S. 14:2(3). The evidence amply supports the conclusion that the offender was engaged in the perpetration or attempted perpetration of armed robbery, since it shows that defendant took the victim's wallet while armed with a dangerous weapon, i.e., a large stick.
Since we find this aggravating circumstance is clearly supported by the record, we find it unnecessary to address whether the jury erred in finding the offender was engaged in the perpetration or attempted perpetration of aggravated burglary or the offense was committed in an especially heinous, atrocious or cruel manner, since the failure of one aggravating circumstance does not invalidate others, properly found, unless introduction of evidence in support of the invalid circumstance interjects an arbitrary factor into the proceedings. State v. Martin, 93-0258 (La. 10/17/94), 645 So.2d 190, 201. Since the evidence supporting the other aggravating circumstances was part of the facts surrounding the murder, it is clear that admission of this evidence did not interject an arbitrary factor into the proceedings.

(c) PROPORTIONALITY TO THE PENALTY IMPOSED IN SIMILAR CASES[7]
Federal constitutional law does not require a proportionality review. Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Nonetheless, La.Sup. Ct.R. 28, § 4(b) provides that the district attorney shall file with this court a list of each first degree murder case tried after January 1, 1976 in the district in which sentence was imposed. The state's list reveals that fifty-two first degree murder cases were tried in Calcasieu Parish since January 1, 1976. Our research reveals that Calcasieu Parish jurors have recommended the death penalty in six cases since January 1, 1976. Three of these cases involved murders committed during the perpetration or attempted perpetration of an armed robbery.[8]
*259 Given the scarcity of comparable cases in Calcasieu Parish, it is appropriate to look beyond the judicial district in which sentence was imposed and conduct the proportionality review on a state-wide basis. State v. Davis, 92-1623 (5/23/94), 637 So.2d 1012, 1030-1031.
There have been several cases in which the death penalty has been imposed on a defendant who knew his victim and killed the victim in the course of an armed robbery. In State v. Baldwin, 388 So.2d 664 (La.1980), the defendant robbed the elderly victim, who had been his former neighbor. He used various household items (skillet, stool, and telephone) to bludgeon her repeatedly to the brink of death. Left on the floor of her kitchen overnight, she later died of the wounds inflicted during that beating. In State v. Narcisse, 426 So.2d 118 (La.1983), the twenty-three year old defendant (whose verbal I.Q. measured 76 and whose performance I.Q. measured 65) went to the home of his aunt, robbed her (taking her wallet), and stabbed her to death, inflicting sixteen wounds. In State v. Tart, 93-0772 (La. 2/9/96) 672 So.2d 116, the defendant went to the home of an elderly couple, for whom he had previously done yard work, committed aggravated burglary and armed robbery, then brutally murdered the couple.
In the instant case, defendant knew the victim, since he had performed yard work for the victim in the past and was the cousin of a woman who had lived with the victim. As in the noted cases, defendant killed his elderly victim during the course of an armed robbery in a brutal fashion.
The Uniform Capital Sentence Report and the Capital Sentence Investigation Report indicate that defendant is a black male who was twenty-two years old at the time of the offense. He has neither children nor other dependents. He is the youngest of three boys born of a common-law union between Pearlie Dean and Eddie Mitchell, Sr. Defendant lived with his maternal grandparents from the time he was a pre-schooler until the age of fifteen. He attended school to the 8th grade.
Sentencing hearing testimony disclosed that defendant had suffered from epilepsy and revealed instances of alcohol abuse, which apparently led to two hospital visits. IQ testing after defendant's arrest measured his IQ at 66. He has had an intermittent employment history of performing yard work. Defendant has a criminal history of four adult theft convictions, together with a resisting arrest conviction noted on the same date as three of the theft convictions.
After having considered the above factors, we are unable to conclude that the sentence of death in the instant case is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
Hence, based on the above criteria, we do not consider that defendant's sentence of death constitutes cruel, excessive, or unusual punishment.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed for all purposes except that this judgment shall not serve as a condition precedent to execution as provided by La.R.S. 15:567 until (a) defendant fails to petition the United States Supreme Court timely for certiorari; (b) that Court denies his petition for certiorari; (c) having filed for and been denied certiorari, defendant fails to petition the United States Supreme Court timely, under their prevailing rules, for applying for rehearing of denial of certiorari; or (d) that Court denies his application for rehearing.
NOTES
[*] Because of the vacancy created by the resignation of Dennis, J., now a judge on the United States Court of Appeals for the Fifth Circuit, there was no justice designated "not on panel" under Rule IV, Part 2, Sec. 3. Panel included Chief Justice Calogero and Justices Marcus, Watson, Lemmon, Kimball, Johnson and Victory.
[1] Assignments of Error Nos. IX, X, XIII, XIV and XV do not represent reversible error and are governed by clearly established principles of law. They will be reviewed in an appendix which will not be published but will comprise part of the record in this case.
[2] Moreover, even assuming the trial judge erred in denying defendant's challenge for cause of Ms. Devillier, the mere fact that he was required to use a peremptory challenge to remove her does not violate the federal constitution. As stated in Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988), "so long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean that the Sixth Amendment was violated."
[3] Only those guilt phase errors in which a contemporaneous objection was raised will be addressed on appeal. See State v. Sepulvado, 93-2692 (La. 4/8/96), 672 So.2d 158; State v. Taylor, 93-2201 (La. 2/28/96), 669 So.2d 364. Accordingly, Assignments of Error Nos. IV, V, VI, VIII, XVII, XVIII and XIX will not be addressed.
[4] In his brief to this court, defendant also contends that the instruction is unconstitutional because it orders the jury to presume that the mental state of a retarded person is the same as that of an average person. However, a new basis for an objection may not be urged on appeal for the first time. State v. Burdgess, 434 So.2d 1062 (La.1983). In any event, this argument is without merit, since the jury heard no evidence at the guilt phase relating to defendant's mental state.
[5] Defendant objects in particular to one photograph, labelled S-36, which shows the scalp reflected away from the skull to demonstrate a depressed fracture across the surface of the skull. However, it was made clear to the jury that the scalp was pulled away by the doctor performing the autopsy, and that the body was not found this way. Based on this testimony, we do not find this photograph to be inflammatory.
[6] This section corresponds to Assignments of Error Nos. XX and XXI in defendant's brief.
[7] This section corresponds to Assignment of Error No. II in defendant's brief.
[8] These three sentences have been vacated. In State v. Perry, 420 So.2d 139 (La.1982), cert. denied, 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983), this court affirmed the defendant's conviction and sentence on appeal, but the federal district court subsequently granted a writ of habeas corpus and ordered the trial court to conduct a new sentencing hearing. Perry v. Maggio, No. CV-83-1621 (W.D.La. 2/10/84). In Dugar v. State, 615 So.2d 1333 (La.1993), we reduced the defendant's death sentence to life imprisonment since he was 15 years old at the time of the crime and could not be constitutionally sentenced to death under Thompson v. Oklahoma, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988). In State v. Cross, 93-1189 (La. 6/30/95), 658 So.2d 683, we reversed defendant's conviction and sentence on the ground the trial judge erroneously failed to excuse a potential juror for cause.