DO NOT PUBLISH

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**06-1430**

**STATE OF LOUISIANA**

**VERSUS**

**KENNETH TITTLE**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 12930-03
HONORABLE DAVID A. RITCHIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**J. DAVID PAINTER**

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Elizabeth A. Picket, and J. David Painter, Judges.

**CONVICTION AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.**

**John F. Derosier**
**Ric Oustalet**
**Carla S. Sigler**
**1020 Ryan Street**
**Lake Charles, LA 70601**
**Counsel for Appellee:**
        **State of Louisiana**

**Mark O. Foster**
**P.O. Box 2057**
**Natchitoches, LA 71457**
**Counsel for Defendant-Appellant:**
        **Kenneth Tittle**

**PAINTER, Judge.**

Defendant, Kenneth Tittle, appeals his conviction of two counts of attempted aggravated rape and the sentences imposed in connection therewith.

FACTS

In July 1999, Defendant moved in with his girlfriend, F.D., the victims' mother.[1] Defendant lived with the family for approximately fifteen months before State child-protection authorities removed both children, J.D. and S.C., from the home in October 2000. At that time, J.D. was eleven years old and S.C. was seven years old. At trial, J.D. testified that Defendant raped her; when asked to elaborate, she explained that he put his penis into her vagina. J.D.'s younger sister, S.C., testified that Defendant touched her "private part" with his "private part."

On June 19, 2003, the Calcasieu Parish District Attorney filed a bill of indictment charging Defendant, Kenneth Tittle, with two counts of aggravated rape in violation of La.R.S. 14:42. The indictment stated that both victims were juveniles. On March 21-23, 2006, the parties selected a jury; after hearing evidence on March 24, and on March 28-29, the jury found Defendant guilty of two counts of a lesser-included offense, attempted aggravated rape.

On May 24, 2006, the court began conducting habitual offender proceedings against Defendant, but the State entered a *nolle prosequi* of the habitual offender bill. The court sentenced Defendant to forty-five years at hard labor on each count, without benefit of parole, probation, or suspension of sentence and with the sentences to run consecutively to one another. Defendant orally objected, arguing that the sentences were excessive. Subsequently, Defendant filed a motion to reconsider

---

[1]The court will use the initials of the juvenile victims and their biological mother in accordance with La.R.S. 46:1844(W)

1

sentence, which the court denied without a hearing and without reasons on June 22, 2006.

Defendant now appeals his convictions and sentences.

DISCUSSION

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent.

There is no indication in the record that the trial court advised Defendant of the prescriptive period for filing post-conviction relief. Louisiana Code of Criminal Procedure Article 930.8 requires the trial court to advise a defendant of the prescriptive period at sentencing. Accordingly, this case is remanded, and the trial court is instructed to inform Defendant of the 930.8 prescriptive period by sending him appropriate written notice within ten days of the rendition of this opinion. The court is further ordered to file written proof that Defendant received the notice in the record.

*Sufficiency of the Evidence*

In his first assignment of error, Defendant argues that the evidence adduced at trial was insufficient to support his convictions. Specifically, he argues that the victims' testimonies were not credible because those testimonies were not consistent with their pre-trial statements. Because a finding that the evidence is insufficient would require acquittal, we address this assignment of error first. *State v. Hearold*, 603 So.2d 731 (La.1992).

2

The analysis for attacks on the sufficiency of trial evidence has been discussed by this court, as follows:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). *It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact* beyond the sufficiency evaluations under the *Jackson* standard of review. See *State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

(Emphasis added).

The jury convicted Defendant of two counts of attempted aggravated rape, violations of La.R.S. 14:42, which states in pertinent part:

> A. Aggravated rape is a rape committed . . . where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
>  . . . .
>
> (4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

 Attempt is defined by La.R.S. 14:27, which states in pertinent part,

> A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

3

The jury apparently reached a "compromise verdict." The victims' testimonies would have supported convictions for completed crimes rather than two attempts. Defendant does not argue that the convictions were invalid because they were compromise verdicts; rather, he argues that the victims' testimonies were so unbelievable that he should not have been convicted at all.

Regarding victim S.C., his most persuasive argument is that her trial testimony simply did not establish aggravated rape or attempted aggravated rape, because there was no testimony that established any degree of penetration or attempted penetration. While S.C.'s testimony does not support the crime charged, it could reasonably be seen as supporting the conviction for attempt because Defendant's touching of the victim's genitals with his genitals could be viewed as an effort to achieve penetration. During the investigation of the crimes at issue, social workers made two videotaped interviews with S.C., one in 2000 and the other in 2002. In a videotaped interview of S.C. that was published to the trial jury, S.C. told a social worker that Defendant had touched her navel through her clothes. Also, she stated that Defendant had spanked her under her nightgown but over her underwear. However, the bulk of S.C.'s statements regarding possible sexual contact by Defendant involved J.D. rather than S.C. herself.

In the 2002 interview, S.C. told another social worker that Defendant hit her on the "private part" with a wet red belt and that in another incident he touched her on the "private" with his hand and hit her in the armpit. S.C.'s statements in the two interviews lend little support to her trial testimony and are logically inconsistent with that testimony, since neither interview indicates that Defendant touched S.C.'s genitals with his genitals.

4

Also, some of S.C.'s statements in both interviews seem nonsensical. In the 2000 interview, she claimed Defendant bit J.D.'s hair, a statement that even the interviewer appeared to find unbelievable. In the 2002 interview, S.C. said that some incidents happened when she was a baby, or five years old, when Defendant whipped her with the red belt and that she was wearing a costume. In the earlier interview, she claimed Defendant whipped *J.D. on the leg* with a red belt.

However, in *State v. Bender*, 598 So.2d 629, 636 (La.App. 3 Cir.),writ denied, 605, 1125, this court explained:

> When a witness is impeached, this simply means the jury, as the trier of fact, was presented with evidence which it could consider and weigh in determining the credibility, or believability, of a witness. Simply because the witness may have been impeached by prior inconsistent statements does not mean that the jury was prohibited from believing anything said by the witness. The inconsistencies in the witness's statements are one of any number of factors the jury weighs in determining whether or not to believe a witness's trial testimony, we will not second guess its ultimate conclusion regarding the witnesses' credibility.

Also, in *State v. Waguespack*, 06-410, p. 10 (La.App. 3 Cir. 9/27/06), 939 So.2d 636, 642-43, this court stated that, "the fact that the record contains evidence which conflicts with the testimony accepted by the trier of fact does not render evidence accepted by the trier of fact insufficient." This court has further explained:

> It is well-settled that the victim's credibility is a matter for the fact finder to assess, and that the appellate courts will not second-guess such assessments, absent manifest error. *State v. Bourque*, 94-291 (La.App. 3 Cir. 11/2/94); 649 So.2d 670. In *Bourque*, we did overturn such an assessment, but only where the defendant presented credible alibi testimony in the face of questionable eye-witness testimony. (The only witnesses to the crime were a child and an adult who had consumed a large amount of alcohol before witnessing the incident.)

*State v. James*, 99-1858, p. 5 (La.App. 3 Cir. 5/3/00), 761 So.2d 125, 129, *writ denied*, 00-1595 (La. 3/23/01), 787 So.2d 1010. *Bourque* is distinguishable from this

5

case in that each eye-witnesses' testimony called into question his competence to properly perceive the events.

In the present case, the testimonies of the victims did not indicate that they could not properly perceive events. The inconsistencies at issue suggest the young girls may have had difficulty recalling or explaining what Defendant had done, but such issues go to credibility rather than competency and are to be weighed by the fact finder. Further, it is clear the jury weighed the evidence before it, because it chose to convict Defendant of the *attempted* aggravated rape of S.C., rather than convicting Defendant of the completed offense. We note that during her direct examination J.D. specifically stated that Defendant raped her and indicated that there was actual penetration.

In her 2002 interview which was published to the jury, J.D. said that Defendant had touched and sexually abused her. Specifically, she alleged that Defendant put his "private" in her mouth and put "his thing in my thing." She also alleged that she saw him "stick his thing" in her sister, S.C.

J.D.'s testimony was stronger than S.C.'s, in that it was more clearly descriptive of Defendant's actions, and J.D.'s 2002 interview was more corroborative of her trial testimony. The evidence adduced from J.D. could have supported a conviction for the completed crime charged, rather than the lesser verdict of attempt.

The jury apparently took into account the inconsistencies in the victim's testimonies, since it returned attempt verdicts on both counts. Therefore, we are unable to conclude that the jury's credibility assessments were unreasonable. Defendants credibility-based attack on the evidence lacks merit.

6

Defendant also complains that there was no physical evidence introduced to support the girls' testimonies. However, as the State points out, this court has cited as a well-settled principle that the testimony of a victim alone, without physical evidence, will support elements of a sexual offense. *State v. Schexnaider*, 03-144 (La.App. 3 Cir. 6/4/03), 852 So.2d 450, 456-57.

*Videotape Evidence*

Defendant further argues the trial court erred by allowing the 2002 videotaped interview of J.D. to be admitted into evidence. When the State tried to establish a foundation for the tape's admissibility, it did not produce either the person who conducted the interview or the person who supervised the interview as required by La.R.S. 15:440.5(A). Instead, the State adduced testimony from Detective Mike Primeaux, the lead investigator on the case and a witness to the interview.

The State concedes the error but argues that it was harmless. The Louisiana Supreme Court has held that confrontation errors are subject to harmless error analysis. *State v. Robinson*, 01-273 (La. 5/17/02), 817 So.2d 1131. Citing language from the U.S. Supreme Court, the *Robinson* court noted the mechanics of such an analysis:

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

> *Delaware v. Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438.

*Id.* at 1137.

In *Robinson*, the trial court limited the defendant's cross-examination of a State witness. Applying the above analysis to the error, the court stated:

> Here, Mr. Williams' testimony was central, indeed crucial, to the prosecution's case. His testimony was the only evidence linking the defendant with the drugs recovered by police officers from the gutter above Mr. Williams' front door. Mr. Williams' testimony was conflicting, at times nonsensical, and reflected some type of confusion or possible mental disturbance on his part. Evidence as to his mental status, either at the time of the incident or at trial, would have been highly probative of the reliability of his testimony. Given these facts, we find "beyond a reasonable doubt" that the restriction on defendant's confrontation right was not harmless.

*Robinson*, 817 So.2d at 1137-38.

In *State v. Cox*, 04-42 (La.App. 3 Cir. 6/16/04), 876 So.2d 932, this court applied the analysis from *Robinson* to the introduction of a co-defendant's statement in the defendant's trial. As in *Robinson*, the *Cox* court found that the error was not harmless:

> Mrs. Sykes' statement was important in this case. It corroborated the testimony of three State witnesses on critical points of the case. First, in her statement, Mrs. Sykes stated that the Defendant admitted that he killed Mr. Sykes while robbing him. The statement corroborated the testimony of Kenny Rhodes, who testified at trial that the Defendant told him he shot a man while robbing him. Mr. Rhodes did not testify as to when or where the Defendant allegedly killed a man, nor did he testify that the Defendant told him the identity of the man he killed.

> Second, the portion of Mrs. Sykes' statement wherein she said she saw the Defendant driving her husband's truck on the night of November 10, 1999, the day her husband became missing, corroborated the testimony of Cathy Johnson, who testified that she saw the Defendant driving a white truck. Ms. Johnson was not asked to identify the white truck as that of the victim and she was not asked on what day her observation occurred.

> Finally, Mrs. Sykes' statement also corroborated Jo Ann Williams' testimony that the Defendant knew Williams had a twenty-gauge shotgun and where she kept it. J.B. Peace testified that Ms. Williams had a twenty-gauge shotgun that was missing, but he did not testify when the gun disappeared.

8

There were no eyewitnesses to the murder of William Sykes. Additionally, there was no physical evidence linking the Defendant to the crime. The statement Elbertine Sykes made to Detective Wilson on November 18, 1999, connected very important loose ends in this case and was the among [sic] the strongest evidence presented by the State.

Considering the foregoing, we find that admission of the statement was not harmless. As a result, the Defendant's conviction must be set aside, his sentence vacated, and the case remanded for a new trial.

*Id.* at 939-40.

Applying the holdings in *Robinson* and *Cox* to this case, we note that the 2002 interview of J.D. was crucial to the State's case in regard to her sister, S.C. S.C.'s testimony, even if believed in toto, did not establish the elements of aggravated rape and was ambiguous with regard to attempted aggravated rape. J.D.'s 2002 interview was not merely cumulative, because there was an absence of corroborating evidence in this case. There was no physical evidence in this case; the corroboration of each victim's testimony came mainly from each one's prior interviews and from each other's testimony. However, J.D.'s testimony established the elements of attempted aggravated rape at the very least.

Regarding the fourth factor in *Robinson*, Defendant had an opportunity to fully cross-examine both witnesses but chose not to cross-examine S.C. at all. Defendant did cross-examine J.D., but she stated that she did not remember either videotaped interview. Finally, the "total force" of the State's case was not strong with regard to S.C. While she testified that Defendant touched her "private part" with his "private part," this testimony did not support the completed crime as charged. Because the State adduced little testimony regarding the circumstances surrounding the incident, Defendant's intent is not easily inferred from S.C.'s testimony. As noted in our

9

*Jackson* analysis, S.C.'s prior interviews did not lend much strength to the State's case. Her first interview in 2000 indicated only that Defendant had touched her "belly button," and her second interview in 2002 indicated that Defendant touched her "private" with his hand and hit her on the "private" with a belt.

Accordingly, we find that J.D.'s trial testimony was clear enough to render the error in admitting the 2002 videotaped interview harmless in regard to Defendant's conviction for his offense against her. However, in regard to S.C., we find that the error was not harmless. Therefore, we reverse Defendant's conviction for the attempted aggravated rape of S.C. and remand for a new trial. *See Hearold*, 603 So.2d 731.

*Closed Circuit TV Testimony*

Defendant asserts that the trial court erred in allowing S.C. to testify via closed circuit television system. Having already determined that the conviction arising out of the alleged rape of S.C. must be overturned, we need not consider this argument.

*Jury Instruction*

In this assignment of error, Defendant argues that the trial court gave a faulty instruction to the jury: "you may *infer* that the defendant intended the natural and probable consequences of his acts." Defendant also objected to the instruction at the trial court level.

As the State points out, Defendant's argument on appeal appears to confuse *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078 (1992) and *Cage v. Louisiana* 498 U.S. 39, 111 S.Ct. 328 (1990), which both addressed reasonable doubt instructions, with *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450 (1979).

10

Defendant's trial counsel based his objection on *Sandstrom*, which addressed the presumption of intent.[2]

The State cites *State v. Mitchell*, 94-2078, pp. 5-6 (La. 5/21/96), 674 So.2d 250, 254-55, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 614 (1996) (footnote omitted), which discussed the issue as follows:

> Defendant contends that the trial court improperly instructed the jury in the guilt phase that it "may infer that the defendant intended the natural and probable consequences of his acts." He argues that he objected to this instruction at trial on the ground it created an improper presumption under *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).
>
> In *Sandstrom*, the Court held that the trial judge erred in instructing the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts," since this instruction could be considered to be a mandatory presumption by the jury and thus improperly shift the burden of proof from the state. In *State v. Copeland*, 530 So.2d 526, 539 (La.1988), we stated:
>
>> The mere use of the word "presume" raises the spectre of a *Sandstrom*-type problem. For that reason, the preferable instruction is ". . . you may infer that the defendant intended the natural and probable consequences of his acts . . ." (emphasis in original).
>
> In the instant case, the trial judge's instruction follows the language we approved in *Copeland*. Clearly, the instruction does not set forth a conclusive presumption shifting the burden of proof from the state to defendant. Accordingly, this instruction was not erroneous.

In light of the discussion and holding in *Mitchell*, we find that the trial court's instruction was appropriate.

---

[2]Trial counsel referred to the case as "*Sadstrom v. Oregon*," but the context indicates counsel was relying on *Sandstrom v. Montana*.

*New Trial*

Defendant argues that the trial court erred in denying his motion for a new trial. However, the record on appeal contains no motion for a new trial. Therefore, we will not consider this argument.

*Excessive Sentence*

In his final assignment of error, Defendant argues that his sentences are excessive. Defendant timely objected to the sentence in open court on May 24, 2006. On June 22, he filed a timely written Motion to Reconsider Sentence; the trial court denied the motion on the same date without reasons. As this court explained in *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Other courts have suggested a three-step test to aid the analysis. "The court should consider three factors in reviewing a judge's sentencing discretion: 1. the nature of the crime, 2. the nature and background of the offender, and 3. the sentence imposed for similar crimes by the same court and other courts." *State v. Lisotta*, 98-648, p. 4 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, 58, *writ denied*, 99-433 (La.

12

6/25/99), 745 So.2d 1183, citing *State v. Telsee*, 425 So.2d 1251 (La.1983); *State v. Richmond*, 97-1225 (La.App. 5 Cir. 3/25/98), 708 So.2d 1272. Attempted aggravated rape is a violent crime. La.R.S. 14:2(13)(i). The trial court observed that Defendant has a long criminal record, which starts with a conviction in 1978, and includes two probation revocations, and a number of violent crimes.

Regarding the third *Lisotta* factor,"[t]he jurisprudence reveals a vast range of sentences for attempted aggravated rape." *State v. Thurston*, 04-937, p. 13 (La.App. 5 Cir. 3/1/05), 900 So.2d 846, 854, *writs denied*, 05-1332, 05-1332 (La. 1/9/06), 918 So.2d 1040 ,05-1342 (La. 1/9/06), 918 So.2d 1041. *See, e.g.*, *State v. McLelland*, 03-498 (La.App. 5 Cir. 10/15/03), 860 So.2d 31, *writ denied*, 03-3372 (La. 3/26/04), 871 So.2d 347, (the court approved a forty-five-year sentence for eighteen-year-old first offender who had "trust relation" as a babysitter, and had sexual relations with four-year-old victim); *State v. Smith*, 02-2340 (La.App. 4 Cir. 3/12/03), 842 So.2d 1153, *writ denied*, 03-1048 (La. 10/17/03), 855 So.2d 759, (the court affirmed concurrent fifty-year sentences along with sentences for companion charges where adult victim suffered extensive psychological harm); *State v. Harris*, 02-1048 (La.App. 5 Cir. 2/25/03), 841 So.2d 1005, *writ denied*, 03-742 (La. 9/19/03), 853 So.2d 637, (the court affirmed a fifty-year sentence where the defendant had a long and violent criminal record); *State v. Hutson*, 34,510 (La.App. 2 Cir. 5/9/01), 786 So.2d 226, *writ denied*, 01-1997 (La. 3/28/02), 812 So.2d 655, (court approved concurrent fifty-year sentences for two attempted aggravated rape convictions along with sentences for companion charges where the defendant had engaged in a pattern of sexual misconduct with victims less that twelve years old). In all of these cases, there were

apparently completed sex acts of some type with the victims. However, the record in the present case also contains evidence that indicates completed sex acts with J.D.

In light of the three factors from *Lisotta*, we find that the trial court did not abuse its broad sentencing discretion. Having reversed the conviction for the alleged offense against S.C., we need not consider Defendant's allegations with regard to the propriety of ordering that the sentences be served consecutively.

CONCLUSION

For these reasons, Defendant's conviction and sentence for the attempted aggravated rape of J.D. are affirmed. The case is remanded to the trial court with instructions to properly inform Defendant of the prescriptive period for filing for post-conviction relief by sending appropriate notice to Defendant within ten days of the rendition of this opinion and to file in the record written proof that Defendant received the notice. Additionally, we reverse Defendant's conviction for the attempted aggravated rape of S.C. and remand for a new trial.

**CONVICTION AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.**