MAX N. TOBIAS, JR., Judge.
 

 | ¡On 24 March 2005, the state charged Gerald Wiltz (“Wiltz” or “the defendant”) with three counts of aggravated assault on a peace officer with a firearm, violations of La. R.S. 14:37.2. Counts 1 and 2 of the bill of information charged the defendant with committing aggravated assault upon Officer Matthew Robinson, and Count 3 charged him with aggravated assault upon Officer Willie Bickham. Wiltz pled not guilty on all counts at his arraignment on 16 January 2007. On 15 November 2007, the trial court found probable cause and denied the motion to suppress the evidence for Count 1.
 

 On 15 November 2007, the state amended the bill of information by entering a nolle prosequi on Counts 2 and 3.
 

 On 2 April 2008, a six-member jury found Wiltz guilty as charged. He was sentenced on 9 April 2008 to ten years in the Department of Corrections (“DOC”), with credit for time served; his sentence was to be served concurrently with any other sentence with parole to be determined by the DOC. That same day, the defense filed a motion to reconsider the sentence and a motion for appeal; the trial court denied the former and granted the latter. (Wiltz moved this court for leave to | afile a pro se brief. Leave was granted but to date, the defendant has not filed a pro se brief.)
 

 STATEMENT OF FACTS
 

 On 29 August 2004, Officer Matthew Robinson, Sr., of the New Orleans Police Department (“NOPD”) and his partner, Officer Willie Bickham, were on proactive patrol near the St. Bernard Housing Development near the intersection of St. Bernard and Harrison Avenues. At approximately 5:30 p.m., the officers observed a speeding vehicle. They activated the lights and siren on their unit and pursued the vehicle for two blocks before making the stop. When the vehicle stopped, the driver exited the vehicle and put his hands on the car as directed by the officers. Wiltz, seated in the front passenger seat, fled the scene. Officer Bickham chased the defendant on foot while Officer Robinson followed in the police unit. Officer Robinson exited his unit and chased Wiltz down an alley between two houses. Officer Bickham followed Officer Robinson into the alley. The defendant slipped in mud. As he got up, he reached into his front pants pocket, withdrew a gun, and pointed it at Officer Robinson. Officer Robinson fired one shot at Wiltz, but the bullet did not strike him. Wiltz continued to run. He turned and pointed his gun at Officer Robinson again. This time, Officer Robinson fired three shots, one of which hit the defendant in his right hip/buttock and caused him to fall. As Wiltz fell, he tossed his gun over a fence into some
 
 *557
 
 trees. Officer Robinson handcuffed the defendant and read him his
 
 Miranda
 
 rights. In the ensuing pat-down of Wiltz’s clothing, Officer Robinson recovered two fully loaded magazine clips. The defendant denied owning the gun and told Officer Robinson that it belonged to his brother. Officer Robinson identified Wiltz in court as the man who pointed a gun at him.
 

 |sNOPD Officer Monisha Bell processed the crime scene in this case. She photographed the area and searched for hair and fiber evidence, et cetera. Officer Bell identified photographs of bullet casings, clothing, and a gun retrieved from the crime scene. She submitted all the evidence retrieved at the scene to the NOPD Central Evidence and Property Division.
 

 Sergeant Cornell Day of the NOPD crime lab assisted technicians in processing the crime scene. He and technicians located four spent bullet casings, a pair of jeans containing loaded firearm magazine clips, and a weapon containing a live round in its chamber and a loaded clip.
 

 The state and the defense stipulated that Ms. Anna Duggar, director of the NOPD crime lab, was an expert in the field of development of latent fingerprints and collection of evidence. Ms. Duggar tested the Larsen .380 semi-automatic handgun retrieved from the crime scene, but was unable to develop any latent fingerprints from it. She also examined three firearm magazine clips recovered, but they also tested negative for fingerprints.
 

 Lieutenant James Bates, NOPD platoon commander, examined the crime scene and pointed out two bullet casings for the crime lab to retrieve. Lieutenant Bates also noted two gun magazine clips taken from the defendant’s clothing as Emergency Medical Service personnel tended to Wiltz’s wound.
 

 Wiltz testified that on the day of the incident, he was a passenger in a car driven by a man named Raymond. As their vehicle turned onto St. Bernard Avenue (at Harrison Avenue), it was stopped by Officers Robinson and Bickham. Wiltz said he panicked when he saw the officers because he had his step-brother’s gun in his right pants pocket and knew he would get into trouble if the officers found the gun. He wanted to stash the gun in the car, but Raymond, the alleged |4driver of the car, would not allow him to do so. The officers ordered Raymond to exit the vehicle. As Raymond did so, Wiltz jumped from the front passenger seat and ran through a field to a nearby alley. Both officers pursued him. He slipped in the mud and grabbed his front pants pocket to prevent the gun from falling out. At that point he heard one of the officers yell, “He’s got a gun.” Wiltz got up and ran again. The officers shot at him four or five times. One of bullets hit him in the right hip/buttock area. When he fell, Wiltz took the gun out of his pocket and threw it over a fence. He denied pointing his gun at any officer.
 

 ERRORS PATENT
 

 A review of the record for errors patent on the face thereof reveals none.
 

 ASSIGNMENTS OF ERROR NUMBERS I AND 2
 

 In his first two assignments, Wiltz argues that the state erred by “soliciting testimony” about Raymond during trial and, second, by referring to Raymond during closing argument. He contends the state’s action denied him a fair trial by implying his testimony was incredible.
 

 The state has the right to rebut evidence adduced by a defendant. La. C.E. art. 611 E. A witness, on cross-examination, may be questioned on any matter relevant to
 
 *558
 
 any issue in the case, including credibility. La. C.E. article 611 B.
 

 La. C.E. art. 607 C permits a party to attack the credibility of a witness by examining him “concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony [i.e., intrinsic evidence].”
 

 The trier of fact makes a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness.
 
 State v. Deruise, 98-0
 
 541, p. 26 (La.4/3/01), 802 So.2d 1224, 1243. Thus, “a reviewing court may impinge on the fact finder’s discretion only to the extent necessary to guarantee the fundamental due process of law.”
 
 Id.,
 
 quoting
 
 State v. Howard,
 
 98-0064, p. 14 (La.4/23/99), 751 So.2d 783, 801.
 

 Wiltz complains that he was denied a fair trial by the actions of the state soliciting testimony that the car in which he was riding was owned by someone who as not named “Raymond,” thus leading the jury to believe Wiltz was lying and fabricated his entire explanation as to why he fled from the officers. The testimony at issue is that Raymond, the alleged driver, would not allow the defendant to stash the gun in the car because Raymond was a convicted felon and feared arrest if the police found a gun in the car. The state objected to the testimony as hearsay. Out of the presence of the jury, the state explained that the police report, which the defense had a copy of, indicated that the vehicle belonged to Marion R. Delavallade and was driven on the night of the incident by Delavallade’s son (whose name was also “Marion”). (The question is whether the son went by the name “Raymond.” The unanswered assertion is whether the “R” in Marion R. Delavallade, Jr. stands for “Raymond.”) The state further maintained that Wiltz would be guilty of perjury if he continued his testimony about Raymond being the driver of the car on the night in question.
 

 Other than his self-serving testimony, Wiltz offered no other proof or evidence of his allegation that Raymond was driving and who, because he was a felon, refused to allow him to stash the gun in the car. In contrast, the state offered the testimony of Officer Robinson, who stated that the police investigation confirmed that the vehicle belonged to Marion R. Delaval-lade, not Raymond. Nevertheless, we do not find that Wiltz was denied a fair trial by the testimony | Relating to the ownership of the car because,
 
 inter alia,
 
 the ultimate issue is one of whether the fleeing Wiltz pointed a loaded handgun at a police officer.
 

 Next, Wiltz complains of the prosecution’s remark in closing argument that he was not being truthful in his testimony concerning Raymond.
 

 In
 
 State v. Casey,
 
 99-0023 (La.1/26/00), 775 So.2d 1022, the Court discussed the scope of closing argument and the standard of review:
 

 The general rule concerning the scope of closing arguments is that they are confined to “evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.” Louisiana jurisprudence on prosecutorial misconduct allows prosecutors wide latitude in choosing closing argument tactics. Fui'ther, the trial judge has broad discretion in controlling the scope of closing argument. And, even if the prosecutor exceeds these bounds, the court will not reverse a conviction unless ‘thoroughly convinced’ that the argument influenced the jury and contributed to the verdict.
 

 Id.
 
 at p. 17, 775 So.2d at 1036 [internal citations omitted].
 

 
 *559
 
 Given the defendant’s testimony and inconsistent statements, the state’s remark was neither unreasonable nor unduly prejudicial. Even if the statement had not been made, the verdict would have been the same because any reasonable jury could conclude that the evidence and testimony supported the state’s case.
 

 Even assuming either one of the instances of which Wiltz complains was improper, the error was harmless because the evidence adduced at trial supports the conviction independent of those instances. Whether Raymond drove the car, or Wiltz carried the gun because he could not leave it in the car, had no bearing on the fact that Wiltz twice raised a gun at Officer Robinson.
 

 The jury chose to discredit the defendant’s testimony not because of the two instances complained of but because the jury determined that Wiltz’s testimony was unbelievable. These assignments are without merit.
 

 |
 
 -¡ASSIGNMENT OF ERROR NUMBER 3
 

 In his third assignment, the defendant maintains that the trial court denied him the right to present a defense by refusing to allow him to testify that Raymond told him that he could not hide the gun in the car because he, Raymond, was a convicted felon. Wiltz argues that those statements are not hearsay and/or are admissible pursuant to the hearsay exception enumerated in La. C.E. art. 803(3); they would have shown his state of mind and the reason he fled from the police.
 

 Code of Evidence article 801 C defines hearsay as “a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” Stated another way, hearsay is “testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out of court asserter.”
 
 State v. Martin,
 
 356 So.2d 1370, 1373 (La.1978).
 
 See
 
 McCormick,
 
 Evidence,
 
 § 246 (Cleary ed. 1972). Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability.
 
 See State v. Weedon,
 
 342 So.2d 642 (La.1977);
 
 State v. Sheppard,
 
 371 So.2d 1135 (La.1979); McCormick,
 
 supra,
 
 § 245. Thus, when an out-of-court statement is offered for a purpose other than to establish that a true assertion has been made, the value of the statement as evidence does not depend on the credibility of the out-of-court asserter and the statement falls outside the scope of the hearsay exclusionary rule. McCormick,
 
 supra,
 
 § 249; 6 Wigmore,
 
 Evidence,
 
 §§ 1766, 1788 (Chadbourne rev., 1976); 4 J. Weinstein,
 
 Evidence,
 
 Par. 801(c)[01] (1981).
 

 | ¡¿Louisiana Code of Evidence article 803(3) provides in pertinent part:
 

 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 

 [[Image here]]
 

 (3) Then existing mental, emotional, or physical condition. A statement of the declarant’s then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), offered to prove the declarant’s then existing condition or his future action. ...
 

 The Official Comment to this exception points out that it clarifies prior Louisiana law and generally follows the federal rules. However, the legislature borrowed from the approach taken by the state of Alaska
 
 *560
 
 by adding the phrase “offered to prove the declarant’s then existing condition or his future action.” This insertion establishes the limited scope of the exception as stated by the Court in
 
 State v. Weedon,
 
 342 So.2d 642, 646 (La.1977) (An out-of-court declaration by one person is inadmissible to show what another person did.)
 

 Considering the foregoing, Wiltz’s assertion that the statement (that Raymond said the gun could not be left in the car because he was a convicted felon) is not hearsay or an exception to the hearsay rule is immaterial. Whether the defendant offered the statement for a non hearsay purpose does not alone make the statement admissible; the general requirement of relevance must also be met before the out of court statement is admissible evidence.
 
 Martin, supra.
 
 Wiltz’s reason for fleeing the scene with the gun had no bearing on his decision to twice point the gun at Officer Robinson. Furthermore, the defendant was not denied his right to present a defense because he told the jury he could not leave the gun in the car. This assignment is without merit.
 

 ASSIGNMENT OF ERROR NUMBER 4
 

 |flIn his final assignment of error, Wiltz complains that his ten-year sentence is excessive.
 

 In
 
 State v. Smith,
 
 01-2574 (La.1/14/03), 839 So.2d 1, the Court set forth the standard to be used in evaluating a claim of an excessive sentence.
 

 Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion.
 

 Id.
 
 at pp. 6-7, 839 So.2d at 4 [internal citations omitted].
 

 In
 
 State v. Baxley,
 
 94-2982, p. 4 (La.5/22/95), 656 So.2d 973, 977, the Court stated that the deliberate inclusion of the prohibition against excessive sentences in the state constitution by its redactors imposed on the court the duty to review the sentencing provisions of criminal statutes. The Court further stated that the court is permitted to determine both whether the statutory range of sentences and the sentence of a particular offender is excessive, even if that offender’s sentence is within the prescribed statutory range.
 
 Id.
 

 In
 
 State v. Bonanno,
 
 384 So.2d 355 (La.1980), the Court discussed the criteria for determining whether a sentence is unconstitutionally excessive as follows:
 

 [T]o determine whether a certain penalty is excessive we must determine whether that penalty is grossly disproportionate to the severity of the crime. To determine whether the penalty is grossly disproportionate to the crime we must consider the punishment and the crime in light of the harm to society caused by its commission and determine whether the penalty is so | mdisproportionate to the crime committed as to shock our sense of justice.
 

 Id.,
 
 384 So.2d at 358 [internal citations omitted].
 

 In
 
 State v. Soco,
 
 441 So.2d 719 (La.1983), the Court also stated that “Maximum sentences provided by the statutes are reserved for the ‘worst kind of offender.’ ”
 
 Id.,
 
 at 720, citing
 
 State v. Quebedeaux,
 
 424 So.2d 1009, 1014 (La.1982). The Court further stated:
 

 
 *561
 
 In order for there to be proper review of the sentence to determine its constitutionality, La. Const. art. 1[sic], § 20, that is, whether the defendant is the worst kind of offender, an adequate record specifying the basis for the sentence must be made. This record is mandated by La. C. Cr. P. [art.] 894.1, which also provides the sentencing judge with guidelines to follow when passing sentence.
 
 Id.
 
 The Supreme Court has also stated that “[i]f the judge records the factors affecting his sentencing decision, the sentence should not be set aside as excessive unless it is grossly disproportionate to the offense or represents nothing more than the needless infliction of pain and suffering.”
 
 State v. Pike,
 
 426 So.2d 1329, 1335 (La.1983).
 

 In
 
 State v. Batiste,
 
 06-0875 (La.App. 4 Cir. 12/20/06), 947 So.2d 810, this court discussed what constituted compliance with La. C. Cr. P. art. 894.1. We stated that “[a]n appellate court reviewing a claim of excessive sentence must determine whether the trial court adequately complied with the statutory guidelines in La. C. Cr. P. art. 894.1, as well as whether the facts of the case warrant the sentence imposed.”
 
 Id.
 
 at p. 18, 947 So.2d 810 at 820. We further stated, quoting
 
 State v. Major,
 
 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, 819, that “[t]he articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions.” 06-0875 at p. 18, 947 So.2d 810 at 820. Additionally, this court stated that “[wjhere the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even Inwhen there has not been full compliance with Art. 894.1.”
 
 Major,
 
 96-1214, p. 10, 708 So.2d at 819.
 

 In the case at bar, Wiltz was convicted of violating La. R.S. 14:37.2, which provides that “[a]ggravated assault upon a peace officer with a firearm is an assault committed upon a peace officer with a firearm.” A conviction under that statute carries a term of imprisonment for not less than one year nor more than ten years. The trial court imposed the maximum sentence, and a review of the record shows an adequate factual basis for the sentence. Officer Robinson testified that as he pursued Wiltz for fleeing the location of the traffic stop, the defendant turned and pointed a gun at him twice. In sentencing the defendant, the trial judge took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1 and further noted:
 

 ... this case started out as a multiple count Bill of Information, ... a three count Bill of Information ... three counts of aggravated assault with a firearm upon a peace officer.
 

 ... count one was aggravated assault upon Officer Matthew Robinson. That’s the count that went to trial. Count two ... was nolle prosed ... on November 16, 2007. There was a third count ... [t]hat count was nolle prosed ... on November 16, 2007....
 

 Defendant ran up an alleyway between two houses with Officer Robinson in hot pursuit. Upon entering the alleyway, the defendant turned around and pointed a firearm at Officer Robinson ... Officer Robinson had removed his service weapon from its holster and was prepared to return [the defendant’s] fire
 

 [[Image here]]
 

 At that point, [the defendant] had the choice to throw down his weapon, put up his hands, and give up. But for some reason, he decided to continue to run. He ran up the alleyway with Officer Robinson still in high [sic] pursuit and turned around once again and pointed his weapon at Officer Robinson ...
 

 When the defendant realized that Officer Robinson wasn’t playing around, the
 
 *562
 
 defendant turned and continued in his attempt to escape ... This defendant had, on two occasions during this chase, he had the opportunity to throw down his weapon and give up. But instead, he chose to assault this officer with a firearm. It is the court’s belief that given the opportunity, [the | iadefendant] would have used that firearm on Officer Robinson ....
 

 Wiltz’s sentence is supported by the facts. The jury unanimously decided that the defendant committed an aggravated assault on Officer Robinson in his attempt to escape apprehension. Other Louisiana courts have upheld ten-year sentences for violation of La. R.S. 14:37.2. See
 
 State v. Mendosia,
 
 36,827 (La.App. 2 Cir. 4/9/03), 842 So.2d 1252;
 
 State v. Noil,
 
 08-278 (La.App. 5 Cir. 10/28/08), 997 So.2d 621;
 
 State v. Jackson,
 
 04-2863 (La.11/29/05), 916 So.2d 1015. We find this assignment lacks merit.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the conviction and sentence of Gerald Wiltz.
 

 AFFIRMED.