SANDRA CABRINA JENKINS, Judge.
| ¶ Defendant appeals his convictions and sentences for distribution of cocaine and possession of cocaine. We find the defendant was not prejudiced by the prosecutor’s closing arguments and therefore there is no abuse of the trial court’s discretion in denying defendant’s motion for mistrial. We do, however, find error in the trial court’s sentencing as to defendant’s conviction on count two. We affirm defendant’s convictions and his sentence as to count one. Defendant’s sentence as to count two is vacated and remanded to the trial court for resentencing in accordance with this opinion.
STATEMENT OF CASE
On June 12, 2008, the state charged Michael J. Lawrence with one count of distribution of cocaine and one count of possession with intent to distribute cocaine. A co-defendant, Louis Seymour, was charged with one count of distribution of cocaine. Trial commenced in this matter on December 5, 2012. The jury found the defendant guilty as charged on count one, distribution of cocaine, and guilty of the lesser included offense, simple possession of cocaine, on count two. As to count one, the trial court sentenced the defendant to five years imprisonment for the offense of distribution of cocaine. The sentencing transcript | ¡.reflects that the trial court sentenced the defendant, on count two, to five years imprisonment for his conviction for “possession with intent to distribute cocaine.” It is from these convictions and sentences the defendant now appeals.

STATEMENT OF FACTS

Detective Michael Dalferes, a member of the Major Case Narcotics Unit of the New Orleans Police Department, testified that on April 11, 2008, he was part of an undercover buy/bust operation targeting street level narcotics dealers; Detective Dalferes’ assignment was to pose as a potential buyer in an unmarked vehicle equipped with audio and video surveillance. At the be *815 ginning of the operation, he was supplied with pre-recorded expense funds to complete any narcotics purchases. Prior to the operation, the bills were photocopied to record the serial numbers.
Once the operation commenced, and his supporting units were in position, Detective Dalferes proceeded down Marais Street. A subject later identified as Louis Seymour flagged him down. Detective Dalferes stopped his vehicle and told Seymour that he wanted “two dimes,” which Detective Dalferes explained is street terminology for two ten dollar pieces of crack cocaine. The subject told him that he could get it and told Detective Dalferes to pull over. Dalferes handed the subject a twenty dollar bill and moved the vehicle to the side of the street.
The subject walked out of the detective’s view, turning on St. Anthony Street. A short time later, he returned with a single twenty dollar piece of crack cocaine wrapped in plastic, rather than two ten dollar pieces Dalferes had requested. Dal-feres then drove away from the area, radioed members of his support team, provided a description of the subject, and gave them the signal to move in and effect the arrest.
^Detective Andrew Roccaforte observed the subject, later identified as the co-defendant, Louis Seymour, make contact with Detective Dalferes. He then watched Seymour proceed on St. Anthony Street in a riverbound direction. He maintained sight of him until he approached the front door of a residence located at 1220 St. Anthony Street.
Seymour knocked, and within seconds he was greeted at the door by a black male. Seymour handed the subject currency in exchange for a small object. After completing the exchange, the subject entered the residence for a few minutes and then left. Roccaforte observed Seymour return to Detective Dalferes’ location where he completed a hand-to-hand exchange.
Detective Kyle Hinrichs was the first detective to arrive to effect the arrest of Louis Seymour. After arresting Seymour, he left him in the custody of two detectives and proceeded to 1220 St. Anthony Street, where he was met by Sergeant Jeff Sislo and another detective. They knocked on the door, and the defendant responded. The officer instructed the defendant to step outside. The defendant was advised of the investigation and of his Miranda rights.[1] He admitted that he had a piece of crack cocaine on him at that time and stated, “I can’t go, I can’t go to jail.”
Mr. Lawrence was placed under arrest and searched. A total of twenty-seven dollars was recovered, which included a twenty dollar bill. A piece of crack cocaine was discovered on his person. Detective Hinrichs compared the serial number of the recovered bill to the original photocopy and determined that they matched.
|4Sergeant Jeff Sislo entered the residence to speak with the occupants and see what was going on. He also did a quick walk through for safety reasons to determine who was present inside the residence. On the coffee table in the front room, he observed approximately six or seven crack pipes (clear plastic tubes with burnt residue) and a razor blade. There were four women inside the residence at the time. One was bedridden. She was identified as the owner.
Mr. Lawrence testified on his own behalf. He denied possessing or distributing any drugs on the day in question. However, defendant admitted to being addicted *816 to crack cocaine, a problem which he was combating. He also admitted to having two previous convictions for possession of cocaine as well as four convictions for theft from when he was much younger.
The defendant informed the jury that he lived nearby the house in question and had gone there that day to visit the bedridden women who lived at the house. Defendant knew her and her daughter Mary from his involvement with crack; however, he did not come to the house on the day in question to get high, only to check on the women’s well-being.
Lawrence stated that when he entered the house there were “six or eight women and men in the back of the house.” While he was talking to Mary’s mother, Mary came from the rear of the house and asked him if he had change for a twenty dollar bill, which he did. He then gave her a ten, a five, and five ones in exchange for the twenty dollar bill, which was the same bill the police recovered from him.
The defendant denied selling any drugs to Louis Seymour.

ERRORS PATENT/ASSIGNMENT OF ERROR NO. 2

| ^Review of the record for errors patent reveals two. The first is also addressed through an assignment of error by the defendant.
The trial transcript shows that the jury found the defendant guilty on count two of the lesser included offense of possession of cocaine; however, the minute entry from the trial states that the defendant was convicted of possession with intent to distribute cocaine. Where there is a discrepancy between a minute entry and the transcript, the transcript prevails. State v. Randall, 10-1027, p. 3 (La.App. 4 Cir. 6/22/11), 69 So.3d 683, 685.
Furthermore, at sentencing, the trial court noted that the jury found the defendant guilty of possession with intent to distribute cocaine before sentencing him to five years on that count. Defendant’s sentence as to count two must be vacated and remanded for resentencing for correction of the minute entry.
The second error patent relates to the trial court’s failure to order that the first two years of defendant’s sentence, as to count one, be served without the benefit of parole as required by La. R.S. 40:967(B)(4)(b). However, as per La. RS. 15:301.1(A) and State v. Williams, 00-1725, p. 10 (La.11/28/01), 800 So.2d 790, 798-99, the sentence is deemed to have been imposed with this restriction, and no further action by this Court is required.

ASSIGNMENT OF ERROR NUMBER 1

By this assignment of error, defendant contends that the trial court erred by failing to grant a mistrial after he objected to several statements by the prosecutor during closing arguments.
Pursuant to La.C.Cr.P. art. 774, the scope of closing argument should be confined to the evidence admitted, the lack of evidence, conclusions of fact that the State or defendant may draw therefrom, and the law applicable to the case. The [^State’s rebuttal shall be confined to answering the argument of the defendant. Id.
While prosecutors have wide latitude with regard to tactics used during closing arguments, they should not appeal to prejudice and should refrain from making personal attacks on defense strategy and counsel. State v. Manning, 03-1982, p. 75 (La.10/19/04), 885 So.2d 1044, 1108; State v. Brumfield, 96-2667, p. 9 (La.10/20/98), 737 So.2d 660, 666. Nevertheless, even where a prosecutor exceeds that wide latitude, the reviewing court will *817 not reverse a conviction unless thoroughly convinced that the argument influenced the jury and contributed to the guilty verdict. State v. Taylor, 93-2201, p. 19 (La.2/28/96), 669 So.2d 364, 375.
A trial court has broad discretion in controlling the scope of closing arguments, and Louisiana courts have consistently held that great consideration should be accorded to the good sense and fair-mindedness of jurors who have seen the evidence, heard the arguments, and repeatedly been instructed by the trial judge that arguments of counsel are not evidence. State v. Casey, 99-0023, p. 17 (La.1/26/00) 775 So.2d 1022, 1036; State v. Mitchell, 94-2078, p. 11 (La.5/21/96), 674 So.2d 250, 258.
In State v. Hoffman, 98-3118 (La.4/11/00), 768 So.2d 542, the Louisiana Supreme Court set forth the standard for determining whether a prosecutor’s remarks are so prejudicial as to warrant a new trial as follows:
Louisiana jurisprudence on prosecuto-rial misconduct allows prosecutors wide latitude in choosing closing argument tactics. See State v. Martin, 539 So.2d 1235, 1240 (La.1989) (closing arguments referring to “smoke screen” tactics and defense “commipinkos” held inarticulate but not improper); State v. Copeland, 530 So.2d 526, 545 (La.1988) (prosecutor’s waving a gruesome photo at jury and urging jury to look at it if they become “weak kneed” during deliberations held not improper). In addition, La.Code Crim. Proc. art. 774 confines the scope of argument to “evidence admitted, to the lack of evidence, to conclusion of fact that the state or defendant may draw therefrom, and to the law applicable to the case.” The trial judge has broad |7discretion in controlling the scope of closing argument. State v. Prestridge, 399 So.2d 564, 580 (La.1981). Even if the prosecutor exceeds these bounds, the court will not reverse a conviction if not “thoroughly convinced” that the argument influenced the jury and contributed to the verdict. See State v. Martin, 93-0285, p. 18 (La.10/17/94), 645 So.2d 190, 200; State v. Jarman, 445 So.2d 1184, 1188 (La.1984); State v. Dupre, 408 So.2d 1229, 1234 (La.1982).
State v. Hoffman, supra at p. 45, 768 So.2d at 583.
Furthermore, prosecutors should not turn closing argument into a plebiscite on crime by making overt references to community sentiment. State v. Deboue, 552 So.2d 355, 364 (La.1989).
During his rebuttal closing, the prosecutor stated:
I had a mentor of mine tell me crack cocaine ... [is] like an iceberg. Looks so small. Just like an iceberg. All you see is what you see above the water. They say that that’s about five or ten percent of the actual size of the iceberg what you can visibly see above the water. That’s not the dangerous part. The part that wrecks your ship, that ruins your boat is the part that’s under water that you can’t see. That’s just like these crack rocks. They look small. And it’s people like Mr. Lawrence, so that either he could make some money or he could support his own addiction, who feed other people’s addictions, who ruin other people’s families and lives.
Defendant objected to the foregoing statement and moved for a mistrial. The court noted the objection, denied the motion, and then admonished the prosecutor to “stick to the evidence.” Shortly thereafter, the prosecutor stated:
Finally, I am going to leave this with you. It’s my last thought. Probably one of the most disturbing things to me *818 during the process of the trial has been during, not really during my closing, but a lot during Mr. Malveau’s closing argument, I don’t know if you picked up on the snickering that’s happening on the other side of the courtroom, all of the laughter. He doesn’t get it. Icebergs. He doesn’t get it. Has no concept, gravity of what he’s done to other people’s lives.
IfiAgain, defendant objected and moved for a mistrial. The court overruled the objection and stated to the prosecutor, “Mr. Ghai, can you wrap it up, please?” The prosecutor continued his argument briefly before stating:
He’s laughing because he’s counting on you for your sympathy. Whether he’s counting on you for your sympathy or just counting on you to look past all of this, or he’s counting on you to let him go. And I beg you, the people of the city, people in this parish—
The defendant then objected to the prosecutor’s reference to “the people of the city” and moved for a mistrial, and the trial court again requested that the prosecutor “wrap it up.”
Defendant contends that the prosecutor’s arguments greatly exceeded the permissible scope of argument set for by La. C.C.P. art. 774 by suggesting that Mr. Lawrence, personally, had ruined people’s lives by selling them cocaine, even though no evidence was submitted to support such an assertion or even that defendant had sold cocaine in the past. Defendant notes that the prosecutor then compounded the error by suggesting that the jurors were obligated to find the defendant guilty on behalf of all the people in the city.
The State cites State v. Clark, 01-2087 (La.App. 4 Cir. 9/25/02), 828 So.2d 1173, in support of its argument that the comments by the prosecutor fall well short of the type of statements that would warrant a mistrial. In Clark, the prosecutor made a reference during rebuttal argument as to how many retail doses of heroin could have been made from the heroin seized from the defendant’s apartment stating, “‘that is two thousand needles sticking out of two thousand arms sitting right there.’ ” Id. at pp. 14-15, 828 So.2d at 1182-1183. Later, the prosecutor told the jury that “it was its chance to say no, that this is not acceptable and that drugs 1¡/will not go on in my city, in my community, in my schools.’ ” Defense counsel objected, but the objection was overruled.
This Court found that:
“In making the “two thousand-needle” comment in the instant case, the prosecutor was illustrating for the jury the societal impact of the retail distribution of the heroin found in defendant’s constructive possession. Even assuming this argument exceeded the scope of permissible argument, one would not be “thoroughly convinced” that the argument influenced the jury and contributed to the verdict. Recognizing the good sense and fair-mindedness of the jurors who heard the evidence, it cannot be said that this comment constituted reversible error.”
Id. at pp. 15-16, 828 So.2d at 1183.
With respect to the prosecutor’s comment’s regarding- the jury’s opportunity to speak for the community and to put a stop to drugs this Court stated:
Applying the previously discussed standards, there is no indication that the jury verdict was not based on the evidence, and there is no indication that the jury was inflamed to mete out lynch-mob justice and convicted the defendant out of passion, not reason, because of these comments.

Id.

With respect to the present circumstances, the prosecutor’s “iceberg” *819 analogy was not unlike the “two-thousand needle comment” in Clark. The prosecutor was commenting on the societal impact of crack for which the evidence suggested defendant was engaged in distributing. As to the prosecutor’s suggestion that it is people like the defendant who ruin other people’s families and lives by selling drugs, although the record evidence supported the conclusion that defendant was engaged in the distribution of crack cocaine, it is perhaps fair to say that the argument exceeded the permissible scope of La. C. Cr. P. Art. 774. Nevertheless, given the circumstances of the offense and the evidence submitted, | inone would not be “thoroughly convinced” that the argument influenced the jury and contributed to the verdict.
Defendant suggests that the impact of the prosecutor’s comments cannot be easily dismissed in light of the strength of his own testimony. However, given the detailed account of the transaction which the police observed, the recovery of the prerecorded twenty-dollar bill and the piece of crack cocaine from the defendant, we cannot agree. Despite defendant’s purportedly innocent explanation for possessing the currency, his previous criminal history provided a sufficient basis for the jury to doubt his credibility. The jury may have also found it curious that defendant was unable to identify the bedridden women in the apartment by name.
With respect to the prosecutor’s apparent attempt to persuade the jury to act on behalf of the community, defendant’s timely objection kept the prosecutor from completing his statement and likely diminished the effect of his comment. In any case, if nothing else, the jury’s verdict as to count two, finding the defendant guilty of the lesser included offense of simple possession cocaine, is support for the conclusion that the jury was not so inflamed by the prosecutor’s comment as “to mete out lynch-mob justice.” Id. at p. 16, 828 So.2d at 1183. In Clark, this Court reached a similar conclusion with respect to the effect if any of the prosecutor’s purportedly inflammatory comments after the jury found the defendant guilty of only possession of heroin rather than possession with intent to distribute heroin for which he would have faced a mandatory life sentence.
When the “good sense and fair-mindedness of the jury” is credited, one would not be thoroughly convinced that the prosecutor’s comments “influenced the jury and contributed to the verdict to defendant’s prejudice.” Id. at p. 17, 828 So.2d at 1184 (emphasis in original).
1 n Defendant’s assignment of error lacks merit.

CONCLUSION

Defendant’s convictions are affirmed as to all counts. Defendant’s sentence is affirmed as to count one. Defendant’s sentence as to count two is vacated and remanded for resentencing. The trial court is ordered to correct the minute entry of December 5, 2011, to accurately reflect the crime for which the defendant was convicted, possession of cocaine.
AFFIRMED, VACATED AND REMANDED FOR RESENTENCING

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).