STATE OF LOUISIANA      *      NO. 2019-KA-0522

VERSUS      *

JOHNNY E. JEFFERSON JR.      *      COURT OF APPEAL

     FOURTH CIRCUIT

     * 

     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 535-270, SECTION "H"
Honorable Camille Buras, Judge
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge Tiffany G. Chase)

Leon Cannizzaro
District Attorney
Donna Andrieu
Kyle Daly
DISTRICT ATTORNEY'S OFFICE
ORLEANS PARISH
619 S. White Street
New Orleans, LA 70119

     COUNSEL FOR APPELLEE

Sherry Watters
LOUISIANA APPELLATE PROJECT
P. O. Box 58769
New Orleans, LA 70158

Johnny E. Jefferson, Jr.
Louisiana State Prison Pine #4 Bed #69
17544 Tunica Trace
Angola, LA 70712

     COUNSEL FOR APPELLANT

                                       **AFFIRMED.**
                                       **JULY 22, 2020**

*JCL, DLD, TGC*   Defendant, Johnny E. Jefferson, Jr. ("Defendant"), appeals his conviction for the second-degree murder of Sam Carter ("Victim"). Following a jury trial, Defendant was found guilty as charged. For the reasons that follow, we affirm the conviction and sentence.

### *Procedural History*

Defendant was charged with the second-degree murder of Victim on August 11, 2016, in violation of L.S.A.-R.S. 14:30.1.[1] He pleaded not guilty. The district court denied the defense motion to suppress DNA evidence. The State's motions to prohibit character evidence about the alleged victim and to invoke firearm sentencing were granted.

During jury selection, Defendant made a motion to dismiss the entire second panel due to the State's use of the facts of the case and alleged misstatements as to the burden of proof. That motion was denied.

---

[1] La. R.S. 14:30.1 provides in pertinent part:

    A. Second degree murder is the killing of a human being:

        (1) When the offender has a specific intent to kill or inflict great bodily harm[.]

On the second day of trial, the district court denied a defense motion to remove a juror found taking notes. Defendant's motions for mistrial based on improper and prejudicial statements during closing arguments were also denied. After deliberation, the jury unanimously found Defendant guilty as charged.

On February 12, 2019, the district court denied Defendant's motions for new trial and set aside judgment and Defendant waived delays. The district court sentenced Defendant to life imprisonment without benefit of parole, probation, or suspension of sentence. Defendant objected to the sentence but no motion to reconsider the sentence was filed. This timely appeal followed.

*Trial Testimony*

On August 11, 2016, an anonymous 911 call reported a shooting in the 2200 block of Peniston Street. Police responded and found Victim lying unresponsive suffering from four gunshot wounds: two in the chest, one in the buttocks, and one in the back. Surveillance footage from a nearby home showed Victim stumbling before a black male wearing a black sleeveless shirt walked up to him and shot him in the back. While it had been raining heavily when police arrived, a relatively dry black shirt was found nearby and appeared to have been recently discarded.

New Orleans Police Department ("NOPD") Homicide Detective Maggie McCourt, the lead investigator, testified at trial. When she arrived on the scene, Det. McCourt spoke with police already present and proceeded to canvass the area for evidence and witnesses. Det. McCourt found a white shirt[2] next to Victim's

---

[2] Testing on the white t-shirt was positive for Victim's DNA.

body. No one was willing to speak to the police, but officers located residential surveillance video of the scene. While viewing the video at trial, Det. McCourt explained that Victim was seen stumbling and eventually falling to the ground.

Det. McCourt also identified the suspect running to Victim and shooting him once in the back, after which the suspect runs away.

Within five days of the shooting, NOPD received some anonymous tips that allowed Det. McCourt to begin an investigation.[3] One week after the shooting, Det. McCourt learned through a Crimestopper tip that the shooter went by the name "Black." In December 2016, another Crimestopper tip identified Defendant as the shooter and the names of two possible witnesses. Det. McCourt searched the NOPD Field Interview Card ("FIC") database and found a card indicating that Defendant was interviewed about an unrelated matter on April 26, 2015. The card described him as 5'11" and weighing one hundred eighty pounds, which, according to Det. McCourt, fit the description of the shooter seen in the surveillance video. Based on the second Crimestopper tip, Det. McCourt developed as witnesses, K.H. and her daughter, L.C., who lived on Amelia Street. Det. McCourt spoke to K.H., who agreed to give a statement at the homicide office.[4] K.H. described the suspect and what he wore at the time of the shooting. Her description was consistent with the shooter seen on the video surveillance.[5] Det. McCourt displayed a confirmation

---

[3] Det. McCourt did not testify regarding tips' content.

[4] L.C., however, refused to speak to Det. McCourt.

[5] K.H. supplied the description prior to viewing the video surveillance footage.

photo of Defendant to K.H., and she positively identified him as the shooter. Further, K.H. recalled that Victim was initially shot near the intersection of Amelia and South Liberty Streets, which is where the police recovered a black t-shirt. Det. McCourt confirmed that the murder weapon was not recovered.

Det. McCourt also identified a copy of an Instagram message sent to "Joe," given to her by a concerned citizen.[6] The Instagram read: "Joe, I know who killed Sam. Black killed Sam. My momma don't have nothing to do with that, so leave me and my people out of this. Sorry for your loss."

K.H. testified at trial she knew Defendant and identified him in court. She had known Defendant about two or three years and he often used her home to shower, sleep, and eat. Victim, who went to school with her daughter, was also an occasional visitor.

On the day of the shooting, K.H. saw Victim at about 5:00 p.m. riding in "Joe's" car on Amelia Street. Victim exited the vehicle and told her that he and Defendant "had just gotten into it." Hoping to quell any rancor between Victim and Defendant, she discouraged Victim from instigating a fight. Soon thereafter, Defendant and L.C. arrived and stood behind K.H. Victim and Defendant began arguing and as K.H. was looking at Victim, gunfire erupted from directly behind her where Defendant was standing. Victim ran down the street and Defendant gave chase. K.H. heard a pop from around the corner and, when she looked, she saw Victim lying in a pool of his own blood.

---

[6] "Joe," who was Victim's friend and drove a gray Acura, was purportedly present when Victim was shot as identified by K.H. in her trial testimony.

The State played the video surveillance footage for K.H. to identify herself, her daughter, Victim's body, and "Joe" driving his car onto the scene. K.H. positively identified Defendant in court as the shooter depicted in the video. Fear of retaliation prevented her from immediately contacting the police.

L.C. also testified. She stated on the day of the shooting, she and Defendant arrived at her residence where Victim and her mother were talking in the front yard. After several minutes of watching Defendant, Victim, and her mother exchange words, she began walking towards her home when she heard several gunshots. She turned and saw Defendant running after Victim. When she followed her mother around the corner, she saw Victim lying on the ground. L.C. testified she did not speak to police out of fear of retaliation.

Defendant's DNA profile matched that found on the black shirt recovered by the police between K.H.'s residence and the location of Victim's body.

***Error Patent***

A review for errors patent on the face of the record reveals none.

***Assignment of Errors***

Defendant has assigned four errors for our review:

1. The trial court erred in denying the motion to dismiss the second prospective jury panel that was prejudiced when the court mistakenly allowed the State to use the facts of the case and skew the burden of proof during *voir dire*.

2. The trial court erred in allowing a juror who had been taking notes to keep the notes and stay on the jury, over defense objection, and without allowing any inquiry into the error.

3. The trial court erred in allowing the State to use vast amounts of hearsay evidence and "street talk" into evidence,

including Crimestopper tips, officer's narration of a video, an anonymous phone tip, and an interview of a person who posted an Instagram about the case; Defendant was denied a fair trial, due process of law, and his right of confrontation.

4. The trial court erred in denying the motions for mistrial based on the improper, inflammatory and prejudicial closing arguments of the State that shifted the burden of proof to the defense and distracted the jurors from dispassionately weighing the evidence.

### Discussion

#### Assignments of Error Number 1 and 2

Defendant's first two assignments of error issues relate to the jury. First, Defendant maintains that the district court erred when it failed to dismiss the second prospective jury panel on the basis the prosecutor tainted the panel during *voir dire* by misstating the law, particularly as to the burden of proof, and by using the facts of the case in his examination. Second, Defendant argues the district court erred in allowing a juror who was taking notes to remain on the jury.

Whether or not to strike a single juror or an entire panel is committed to the discretion of the district court. *State v. Lucky,* 96-1687, p. 13 (La. 4/13/99), 755 So.2d 845, 853; *State v. Conklin*, 18-0718, p. 12 (La.App. 1 Cir. 2/28/19), 274 So.3d 675, 684, *writ denied,* 19-00665 (La. 10/8/19), 280 So.3d 591. While the defense claims the following comments by the prosecutor during *voir dire* tainted the jury panel, Defendant did not object at the time:

> Very quickly. As I said, this is one the most heinous things you can do in this world but it is also the simplest of elements to prove. Number one, we must prove that [Victim] is dead. Somebody's going to come in and tell you that [Victim] is no longer alive. Number two, we must prove that Defendant killed him with the intent to kill him or with intent to cause great bodily injury and he just happened to die. All right?

7

In Louisiana we only must prove that he intended to but intent forms in an instant . . . But that light, it went red and you just said, I'm going, right? It's the same thing with murder. It may not have been planned. Mr. Lopez makes me upset. I've got a beer bottle. I hit him across the face. That's murder. I intended to hit him. I intended to cause an injury. I intended to kill him. That forms in an instant.

So motive is something you all hear about, right? It's how you solve a crime. We've got [Victim] dead. You may think, who might want him dead? It may help develop who the suspect is. But once they had a suspect, that suspect has a right to say absolutely nothing. And oftentimes, that happens. There's a killing and I can't tell you why. I can't tell you if he can't tell you. I can't tell you if he had a beef before it, I can't tell you if he said something. I can't tell you if 20 years ago, he kissed his girlfriend. I don't know. All I must prove is that that man had the intent to kill or inflict great bodily injury on [Victim]. That's it. Because I can't talk to him. Do you see what I'm saying?

There's something higher than that called "beyond all doubt." That's the highest it can ever be. "Beyond all doubt" means, like, we're all there, we all saw it happen. There's no question. And a reasonable doubt is lower than that. Would you hold me to my lower standard of beyond a reasonable doubt or would you want to push me higher to beyond all doubt?

. . . You go up into that room, and the judge will tell you in her instructions, you must be convinced beyond a reasonable doubt, which means you're firmly convinced.

At this point, after a bench conference, the district court addressed the panel:

[R]easonable doubt is a tough legal concept. It's even tougher when you are trying to ask jurors in a case like this to apply the standard. But when you really boil it all down, it's not that difficult. . .You're going to know it. You're going to know when you go in that jury room. If you have a doubt that's based upon reason and common sense, not a capricious whim or "I didn't like [the prosecutor]" or "I didn't like [defense counsel] or "The officer didn't look us in the eye."

If you have a reasonable doubt, if there is something – "The witness was not corroborated by other witness testimony." "The witness was inconsistent with what they said before about this case." Those type of things are very real. "I don't believe the identification." "I don't believe that witness had a good opportunity to see what he or she said they saw and the description's off." Those are all real, tangible items that you are

ascribing a thought and an articulation as to why you think there's a reasonable doubt.

If you have that in this case, you must find Defendant not guilty. . . the law vests with you as jurors the ultimate decision-making in this case. You must be firmly convinced in your minds of the truth of the charge. You must be firmly convinced that [Defendant] did, in fact, kill [Victim] in this case[.]

Defendant's failure to object contemporaneously to the prosecutor's use of the facts during *voir dire* precludes review of the issue on appeal. La. C.Cr.P. art. 841;[7] *State v. Ross,* 15-1031, p. 16 (La.App. 4 Cir. 6/15/16), 195 So.3d 1210, 1221. In addition, once an objection is made, La. C.Cr.P. art. 841(A) requires a defendant to make known the grounds for his objection, and he is limited on appeal to those grounds articulated at trial. *State v. Brooks,* 98-0693, p. 9 (La.App. 4 Cir. 7/21/99), 758 So.2d 814, 819; *State v. Hayes,* 12-0357, p. 8 (La.App. 4 Cir. 1/23/13), 108 So.3d 360, 365-66. By not objecting at trial, Defendant failed to preserve this issue for review. *Ross*, 15-1031, p. 21, 195 So.3d at 1223-24.

Nevertheless, any confusion created by the prosecutor's definition of reasonable doubt was clarified by the district court's explanation of the term. Moreover, at the conclusion of *voir dire*, the court placed in proper perspective the weight to be accorded comments made by counsel during *voir dire*:

I would advise the jury at this juncture, the law comes from the court. The lawyers may talk about the law or give you hypotheticals about the law but if you are selected as a juror, at the conclusion of this trial, the proper instruction on the law will come from me, the Court, okay? So everything the lawyers say is not evidence. What the lawyers are telling you, both [the prosecutor and defense], is not evidence in the case.

---

[7] La. C.Cr.P. art. 841 states in pertinent part:

A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.

Considering the district court's explanation to the jury, we find no abuse of discretion. This assignment of error has no merit.

The next assignment of error concerns a juror taking notes during the testimony of the State's DNA expert on the second day of trial. The district court informed the juror that note taking was prohibited. The defense requested dismissal of the juror. The court denied the defense request, explaining:

> I have been watching this jury very attentively and I think that's the only time she just reached in and I'm going to – you know, if you want me to take her notes from her, I will, but I don't think she wrote it. I think she started to write something and then I caught it, but I'll ask her.
>
> . . . And let the record reflect it [note taking] was only during the DNA - -

On July 19, 2019, we granted Defendant's motion to supplement the record on appeal, seeking, *inter alia*, a transcript, *per curiam,* or other evidence of the ultimate resolution as to the outcome of the district court's handling of the juror who was taking notes. In response to our order, the district court submitted a *per curiam* opinion:

> A jury was selected on February 5, 2019, and opening statements made by the State of Louisiana and counsel for the defense.
>
> The trial resumed on February 6, 2019, with the State of Louisiana calling witnesses. During the testimony of the DNA expert, the court noticed a juror taking notes. The court advised the juror that note taking was not permitted and the juror immediately stopped.
>
> The court requested that the court deputy retrieve the notes from the juror, which she did . . .
>
> The court was presented with one sheet of paper from the court deputy. A review of the piece of paper revealed that the court had observed the note taking at the very early stage and that nothing of importance had been noted.
>
> There was no further incident regarding the notes.

Defendant contends the district court erred by denying his motion to remove the juror without first conducting an *in camera* inquiry into when the note taking started, what was done with the notes, and whether the juror shared them with other members of the jury.

La. C.Cr.P. art. 793 in pertinent part provides:

A. Except as provided in Paragraph B of this Article, a juror must rely upon his memory in reaching a verdict.
                  * * *
B. A juror shall be permitted to take notes when agreement to granting such permission has been made between Defendant and the state in open court but not within the presence of the jury. The court shall provide the needed writing implements. Jurors may, but need not, take notes and such notes may be used during the jury's deliberations but shall not be preserved for review on appeal. The trial judge shall ensure the confidentiality of the notes during the course of trial and the jury's deliberation and shall cause the notes to be destroyed immediately upon return of the verdict.

Considering the district court's *per curiam* opinion in this matter, Defendant has not shown he suffered any prejudice by the district court's denial of his motion to unseat the note-taking juror. We further find that no *in camera* inquiry was necessary given the facts as laid out by the district court.[8]

Under La. C.Cr.P. art. 921, an appellate court shall not reverse a judgment because of any error "which does not affect substantial rights of the accused." Whether substantial rights of the accused were violated is determined under federal harmless error standards, *i.e.,* whether the guilty verdict in this trial was surely unattributable to the error. *State v. Johnson,* 94-1379, p. 14 (La.11/27/95), 664 So.2d 94, 100, (citing *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124

---

[8] The *per curiam* clarifies that the note taking had just begun, the district court took possession of and destroyed the notes, and the notes were not shared with the rest of the jury.

L.Ed.2d 182 (1993)); *State v. Duckett,* 19-0319, p. 9 (La.App. 4 Cir. 12/18/19), 288 So.3d 167, 174.

*Johnson* distinguished between "trial errors," which may be reviewed for harmless error, and "structural errors," which defy analysis under the harmless error doctrine. *Johnson*, 94-1379, p. 14, 664 So.2d at 100, (citing *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). The *Johnson* Court stated that "trial error" is error occurring during presentation of the case to the trier of fact and may be quantitatively assessed in the context of the other evidence. *Id.* A "structural error" is one that affects the framework within which the trial proceeds, and includes "the complete denial of counsel; adjudication by a biased judge; exclusion of members of defendant's race from a grand jury; the right to self-representation at trial; the right to a public trial; and the right to a jury verdict of guilt beyond a reasonable doubt." *Johnson*, 94-1379, pp. 14-15, 664 So.2d at 101 (citations omitted).

Because the error, if any, committed by the district court is a "trial error," Defendant must demonstrate that the verdict was attributable the district court's failure to remove the juror. We find he did not. The evidence of Defendant's guilt of second-degree murder was substantial. Both K.H. and L.C. testified that Defendant shot Victim. Moreover, K.H. positively identified Defendant as the person depicted shooting Victim in the surveillance video. Finally, the jury itself watched the video and could reach its own conclusions.

This assignment of error has no merit.

*Assignment of Error Number 3*

Defendant argues he was denied a fair trial, due process of law, and right of confrontation where the district court erroneously allowed the State to introduce

hearsay evidence in the form of: (1) Crimestopper tips; (2) Det. McCourt's narration of the video surveillance; (3) anonymous phone tips (4) an Instagram post; (5) "street talk;" and (6) FIC.

Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(A)(1) and (C). However, "when an out-of-court statement is offered for a purpose other than to establish that a true assertion has been made, the value of the statement as evidence does not depend on the credibility of the out-of-court asserter, and the statement falls outside the scope of the hearsay exclusionary rule." *State v. Wiltz*, 08-1441, p. 7 (La.App. 4 Cir. 12/16/09), 28 So.3d 554, 559.

Where an investigating officer testifies concerning events leading to the arrest of a defendant, statements are not hearsay if offered merely to explain the officer's actions and not for the truth of the matter asserted. *State v. Brown*, 52,266, p. 23 (La.App. 2 Cir. 9/26/18), 256 So.3d 431, 446, *writ denied*, 18-1797 (La. 3/25/19), 267 So. 3d 597. In other words, where the officer does not testify regarding the substance of what he was told, but with regard to what he did in response to that information, the testimony is not considered hearsay. *State v. Hawkins,* 96-0766, pp. 4-5 (La. 1/14/97), 688 So.2d 473, 477; *State v. Lloyd*, 48,914, pp. 27-28 (La.App. 2 Cir. 1/14/15), 161 So. 3d 879, 898.

A district court's ruling on the admissibility of evidence should not be reversed absent an abuse of discretion. *State v. Clanton,* 19-0316, p. 8 (La.App. 4 Cir. 11/6/19), 285 So.3d 31, 37.

Det. McCourt testified she received a Crimestopper tip on December 8, 2016. When the prosecutor asked what the tip "told" her, the district court

sustained the defense's objection. Following argument out of the presence of the jury, the district court ruled the State could question the detective about the Crimestopper tip on a "very limited basis." The prosecutor proceeded:

Q. . . did that Crimestopper's tip list three individuals who were present at the shooting?

A. Yes.

Q. Did it include [Defendant]?

A. Correct.

Q. [ L.C.]?

A. Yes.

Q. And [K.H.]?

A. Yes.

Det. McCourt testified that because of this tip, she identified K.H. and L.C. as witnesses and, thereafter, interviewed K.H. in connection with the investigation. She acknowledged that she had no way of knowing how the tipster acquired the information and admitted that it was possible "street talk."

The district court ruled that Det. McCourt's testimony was admissible to explain the police investigation and the steps leading to Defendant's arrest, and, thus, not hearsay. We find no abuse of discretion.

Defendant also argues that the introduction of the Instagram post, FIC, "street talk," anonymous phone tips, and the Crimestopper tip that "Black" was the shooter, were inadmissible hearsay. However, these matters were not preserved for appellate review.[9]

_____

[9] Defendant maintains that he objected to the introduction of the Instagram post. However, no objection is found in the record.

However, even if preserved for appeal, we find all are admissible to explain the police investigation and the steps leading to Defendant's arrest. Finally, as to the Det. McCourt's narration of the surveillance video, the video merely corroborated the testimony from K.H. and L.C. and no evidence exists that Det. McCourt's comments influenced the jury.[10]

This assignment of error is meritless.

*Assignment of Error Number 4*

Finally, Defendant maintains the district court erred by denying his motions for mistrial based upon improper and inflammatory statements by the State during closing arguments. Defendant argues the State improperly shifted the burden of proof, commented on Defendant's silence, and misrepresented the facts and law.[11]

Pursuant to La. C.Cr.P. art. 774, "[t]he argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the State or defendant may draw therefrom, and to the law applicable to the case." However, prosecutors retain "considerable latitude" when making closing arguments. *State v. Taylor,* 93-2201, p. 19 (La. 2/28/96), 669 So.2d 364, 374; *State v. Henry,* 13-0059, p. 29 (La.App. 4 Cir. 8/6/14), 147 So.3d 1143, 1160. Further, the district court has

---

[10] The jury also watched the surveillance video just before closing arguments without any narration or commentary.

[11] Defendant cites as improper argument by the State:

    a. Defendant was a principal for simply being on the scene.

    b. "I want you to consider what has not been brought before you . . . and the only thing we hear from the defense is that it's not enough."

    c. Imploring the jury to find guilt "on behalf of the people in this city who get to look out their door and find dead bodies in the driveway."

    d. "The streets are begging you right now . . .Streets pay attention to what we do . . . you will decide if it's enough for New Orleans."

broad discretion in controlling the scope of closing arguments. *State v. Casey,* 99-0023, p. 17 (La. 1/26/00), 775 So.2d 1022, 1036; *State v. Diggins,* 12-0015, p. 26 (La.App. 4 Cir. 10/23/13), 126 So.3d 770, 791.

"[E]ven if the prosecutor exceeds these bounds, the court will not reverse a conviction unless 'thoroughly convinced' that the argument influenced the jury and contributed to the verdict." *Casey,* 99-0023, p. 17, 775 So.2d at 1036. This court has recognized that "great consideration should be accorded to the good sense and fair-mindedness of jurors who have seen the evidence heard the arguments, and repeatedly been instructed by the trial judge that arguments of counsel are not evidence." *State v. Lawrence,* 12-1026, p. 6 (La.App. 4 Cir. 7/3/13), 120 So.3d 812, 817 (citing *State v. Mitchell,* 94-2078, p. 11 (La. 5/21/96), 674 So.2d 250, 258.)

With these principles in mind, we look at Defendant's first complaint that the State said Defendant was a principal for simply being on the scene:

> The judge will also tell you about the law of principals. That there were individuals on the scene and that if you believe that he was in some way connected to the shooting of Sam Carter and connected to the person – since there were three shots fired and you just say, "You know what? I don't believe K.H., I don't believe L.C., but obviously he's on the scene, his shirt's there, three shots were fired and he had something to do with it." He is equally as guilty because he's a principal to the crime involved.
>
> I don't think any of those are right. I believe through the evidence, he is guilty as charged.

After the jury exited the courtroom to begin deliberations, the district court acknowledged that defense counsel lodged two contemporaneous objections and motions for mistrial during closing arguments. These concerned the State's alleged "burden shifting" argument and the State's untimely production of a witness's statement, both of which were denied. No contemporaneous objection was made

16

concerning the prosecutor's remark as to the law of principals. As such, the issue has not been preserved for appellate review.

Next, contrary to Defendant's assertion, the State did not improperly shift the burden of proof by referencing Defendant's failure to testify. In Defendant's closing argument, the basis for acquittal was that the State's evidence was insufficient to support the conviction. In rebuttal, the State merely pointed out that Defendant produced no evidence to the contrary. The State made no mention of Defendant's failure to take the stand.

Further, the defense did not object to the prosecutor's comments about people looking out their windows and finding bodies in the street. We note, however, that in the surveillance video, a man is seen stepping onto his porch and observing Victim's body in the street.

Finally, while Defendant did not object, the prosecutor stated in rebuttal: "The streets are begging you right now . . .Streets pay attention to what we do . . . you will decide if it's enough for New Orleans." These statements were in response to defense counsel's use of the phrase, "the streets are talking," during Det. McCourt's cross-examination and in closing arguments. We find no error.

"While the prosecution must base its conclusions and deductions in closing arguments upon evidence adduced at trial, both the State and defense are entitled to their own conclusions as to what is established by the evidence, and either may press upon the jury any view arising out of the evidence." *State v. Bailey*, 12-1662, p. 15 (La.App. 4 Cir. 10/23/13), 126 So.3d 702, 712.

None of the comments made by the State during closing argument warrants a mistrial. No evidence exists that the State's remarks so inflamed the jury that it

influenced the verdict. In addition, the district court specifically instructed the jury that opening statements and closing argument are not evidence.

This assignment of error has no merit.

### *Conclusion*

Finding no merit to any of the assignments of error presented for our review, we affirm Defendant's conviction and sentence.

**AFFIRMED.**